IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRACY JOSEPH JOHNSON,

      Plaintiff,

      v.

TILLAMOOK COUNTY, BOBBY LUNDY,
TRACI HILLSTROM, VICTOR
GUTIERREZ, BRAD ROHDE, JENNY
MOBERG, RACHEL BRANTNER, BRETT
DYE, and GLEN WATSON

      Defendants.

3:15-cv-00125-PK

FINDINGS &
RECOMMENDATION

---

PAPAK, Magistrate Judge:

Plaintiff Tracy Johnson brings this action against defendants Tillamook County (the "County"), Jenny Moberg, and Deputies Bobby Lundy, Traci Hillstrom, Victor Gutierrez, Brad Rohde, Rachel Brantner, Brett Dye, and Glen Watson (collectively, the "Deputy Defendants"). Johnson asserts four Claims for Relief. Through his First Claim for Relief, Johnson alleges that Moberg and the Deputy Defendants subjected him to cruel and unusual punishment in violation of his rights under the Eighth Amendment to the United States Constitution. *See* Am. Compl. ¶¶ 10-14 (#11). Through his Second Claim for Relief, Johnson alleges that the County's custom, policy, and practice caused his Eighth Amendment rights to be violated. *See id.* at ¶¶ 15-19. Through his Third Claim for Relief, Johnson alleges that the County and the Deputy Defendants violated Title II of the Americans with Disabilities Act ("ADA") by failing to make reasonable accommodations for his disability. *See id.* at ¶¶ 20-26. Finally, through his Fourth Claim for

Relief, Johnson alleges that the County was negligent in failing to ensure his health and safety. *See id.* at ¶¶ 27-31.

Now before the court is Defendants' Motion for Summary Judgment (#47). Defendants move for summary judgment on each of Johnson's claims and, alternatively, for partial summary judgment on Johnson's prayer for damages for lost wages. For the reasons provided below, Defendants' Motion for Summary Judgment should be granted in part and denied in part.

## BACKGROUND[1]

Johnson was diagnosed with porphyria cutanea tarda ("PCT") in November of 2009. Johnson Decl. ¶ 2, Ex. 1 – Ex. 3 (#56). PCT is a condition that causes skin to painfully blister when exposed to florescent light. *Id.* At all relevant times, only the tops of Johnson's hands and feet were susceptible to PCT symptoms. *Id.* at ¶ 2, Ex. 1.

On December 1, 2013, Johnson pleaded guilty to DUII in Tillamook County Court. *Id.* at ¶ 3. Consequently, he was ordered to serve two days in the Tillamook County Jail. *Id.* Johnson arrived at the jail at 9:50 a.m. on February 28, 2014 to begin serving his sentence. Engle Decl. Ex. 2, at 5 (#57).[2] Upon arrival, Johnson provided the jail with medical documentation of his PCT and latex gloves that he brought to protect his hands. Johnson Decl. ¶ 4 (#56). Johnson was initially placed in cell 905, which had little to no lighting. *Id.*; Hillstrom Decl. ¶ 8 (#49); Warren Decl. Ex. 1, at 28 (#51-1). After approximately one to two hours, Johnson was moved to cell 903, where he served the remainder of his sentence. Johnson Decl. ¶ 4 (#56); Hillstrom Decl. ¶ 8 (#49). The parties dispute the level of florescent light that was present in cell 903. Johnson contends that he was exposed to "full florescent light" in the cell. Johnson Decl. ¶ 4

---

[1] Except where expressly indicated otherwise, I construe the evidentiary record according to the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.
[2] The exhibits to the Declaration of Barry Engle are not separately paginated. Therefore, pinpoint citations to those exhibits correspond with the pagination of the documents therein.

(#56). He further contends that, at times, the other cells were reduced to low light, but cell 903 never was. *Id.* Conversely, Defendants contend that the lights in cell 903 were dimmed for the entirety of Johnson's sentence. Hillstrom Decl. ¶¶ 8-9 (#49); Lundy Decl. ¶¶ 2, 4 (#48). It is undisputed that the lights in cell 903 were never completely turned off. Lundy Decl. ¶¶ 3-4 (#48).

Defendant Moberg worked as the jail's only nurse during Johnson's sentence. She arrived for her shift at the jail at 3:19 p.m. on February 28, 2014. *See* Engle Decl. Ex. 2, 8 (#57). Defendant Hillstrom then informed Moberg about Johnson's condition. *Id.* Ex. 1, at 56-57. Moberg immediately determined that Johnson needed to be released early because the jail lacked the medical capacity to care for him. *Id.* Ex. 1, at 64-68. Moberg informed all of the Deputy Defendants about the recommended release, but they did not heed her recommendation. *See id.* Ex. 1, at 72-74 (Moberg testifying that she told all the deputies that were working on February 28, 2014 that Johnson needed to be released); *id.* Ex. 2, at 3-4, 8-9, 12 (Officer Activity Log showing that all of the Deputy Defendants were working on February 28, 2014).

Johnson was not permitted to wear his latex gloves or any other gloves during his sentence. *See* Johnson Decl. ¶¶ 6-7 (#56). Johnson attempted to cover his hands with his clothes and blanket. *Id.* at ¶ 5. However, he occasionally inadvertently removed his hands from their covering when he fell asleep. *Id.* Johnson asked multiple deputies for gloves and for the lights in his cell to be dimmed, but those requests went unanswered. *Id.* at ¶ 6. At approximately 7:00 a.m. on March 1, 2014, the second day of Johnson's sentence, Deputy Dye provided Johnson with an extra pair of socks to cover his hands. *Id.* Johnson was released from the jail at 9:10 a.m. that same day. Engle Decl. Ex. 2, at 16 (#57). Although Johnson was released

approximately one day early, Defendants admit that the early release was due to overcrowding and security concerns—not Johnson's medical condition. Lundy Decl. ¶ 5 (#48).

Upon being released, Johnson had blisters on the backs of his hands that he recognized to be caused by exposure to florescent light. Johnson Decl. ¶ 9 (#56). The blisters turned to painful sores and scabs that lasted for months. *Id.* As a result, Johnson underwent months of bloodletting to alleviate the sores. *Id.* This suit followed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The substantive law governing a claim or defense determines which facts are material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In adjudicating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor weigh evidence. *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990).

## DISCUSSION

### I.    Eighth Amendment Claims

Through his First Claim for Relief, Johnson alleges that Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his medical need to avoid exposure to florescent light. *See* Am. Compl. ¶¶ 10-14 (#11). Through his Second Claim for Relief,

Johnson alleges that the County's custom, policy, and practice caused his Eighth Amendment rights to be violated. *See id.* at ¶¶ 15-19.

For the reasons provided below, Moberg is entitled to summary judgment on Johnson's First Claim for Relief. Genuine issues of material fact preclude summary judgment on the remainder of Johnson's First Claim for Relief. Genuine issues of material fact also preclude summary judgment on Johnson's Second Claim for Relief.

## A. Legal Standard

Jail officials violate the Eighth Amendment when they act with "deliberate indifference" to an inmate's serious medical needs. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard and a subjective standard. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by, Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)). The objective standard is satisfied by the existence of a "serious medical need." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The subjective standard is satisfied when a jail official "knows of and disregards an excessive risk to inmate health." *Farmer*, 511 U.S. at 837; *accord Colwell*, 763 F.3d at 1066 (citations omitted). That state of mind is otherwise known as "subjective recklessness." *Johnson v. Corizon Health, Inc.*, No. 6:13-CV-1855-TC, 2015 WL 1549257, at *15 (D. Or. Apr. 6, 2015) (citing *Snow*, 681 F.3d at 985–86). It may be established by showing "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference."[3] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). Although the subjective standard "contains a heightened foreseeability requirement, this requirement

---

[3] Defendants do not argue that the blistering Johnson suffered after his sentence was not caused by the florescent lighting in the jail.

differs from the traditional negligence foreseeability requirement only insofar as deliberate indifference requires the defendant to be *subjectively* aware that *serious* harm is likely to result from a failure to provide medical care." *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002).

### B. Analysis

Defendants argue they are entitled to summary judgment on Johnson's Eighth Amendment claims because (1) Johnson's PCT was not a serious medical condition, (2) Defendants did not act with deliberate indifference, and (3) Defendants are entitled to qualified immunity. I address each issue, in turn, below.

### 1. The Objective Standard—Serious Medical Need

Defendants argue that Johnson's PCT was not a serious medical condition because it had been asymptomatic since 2009. I disagree.

"A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (citations omitted) (internal quotation marks omitted). Additionally, a serious medical need may be established by evidence of "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell*, 763 F.3d at 1066 (citation omitted) (internal quotation marks omitted).

Here, Johnson testified that he sustained blisters that felt like "boiling water being dripped on [his] hands all of the time" as a result of the fluorescent light exposure he endured during his sentence. Johnson Decl. ¶ 9 (#56). That pain lasted for approximately eight to nine months. *Id.* Johnson further testified that his injuries could have been avoided if defendants had

provided him with adequate protection for his hands, such as gloves. *See id.* ¶¶ 2, 5, 6-7. The

jail's policy permitted inmates to wear gloves. *See* Warren Decl. Ex. 1, at 35 (#51-1); Dye Decl.

¶ 5 (#50). Jail policy also apparently permitted the issuance of an additional pair of socks that

Johnson could use to cover his hands. *See* Dye Decl. ¶¶ 4-5 (#50). Deputy Dye provided

Johnson a second pair of socks for that reason, but only after Johnson had endured approximately

19 hours of continuous exposure to florescent light. *See* Engle Decl. Ex. 2, at 5, 13 (#57)

(showing Johnson being booked at 9:50 a.m. on February 28, 2014 and receiving an additional

pair of socks at 6:07 a.m. on March 1, 2014); Johnson Decl. ¶ 4 (#56) (Johnson admitting that he

was kept in a room with no lights for the first one to two hours of his sentence). On these facts, a

reasonable trier of fact could find that Defendants' failure to treat or accommodate Johnson's

PCT resulted in a significant injury that caused "chronic and substantial pain," the infliction of

which was "unnecessary and wanton." *See Colwell*, 763 F.3d at 1066 (citation omitted) (internal

quotation marks omitted); *Peralta*, 744 F.3d at 1081 (citations omitted) (internal quotation marks

omitted). Johnson has also presented medical documentation of his PCT diagnosis and

treatment. Johnson Decl. ¶¶ 4, 9-10, Ex. 1 – Ex. 3 (#56). Therefore, a reasonable trier of fact

could also find that Johnson suffered "an injury that a reasonable doctor or patient would find

important and worthy of comment or treatment." *Colwell*, 763 F.3d at 1066 (citation omitted)

(internal quotation marks omitted).

   Defendants' argument regarding Johnson's PCT being asymptomatic since 2009 is

unavailing. Johnson submitted a letter from his doctor stating that Johnson experiences "very

few outbreaks due to his vigilance at protecting his skin." Johnson Decl. Ex. 1 (#56). Johnson's

prior successful manage of his PCT does not preclude a finding that Defendants acted with

deliberate indifference by prohibiting Johnson to continue to effectively manage the condition

during his sentence. Johnson has generated genuine issues of material fact as to whether his PCT constituted a serious medical condition.

### 2. The Subjective Standard—Deliberate Indifference

Defendants next argue that they are entitled to summary judgment on Johnson's Eighth Amendment claim because he cannot establish that any of them acted with deliberate indifference. In support, Defendants note that PCT is a rare condition that none of them were familiar with. Defendants further contend that their attempts to accommodate Johnson's PCT preclude a finding of deliberate indifference. I disagree.

### a. The Deputy Defendants

A reasonable trier of fact could find that the Deputy Defendants acted with deliberate indifference. Hillstrom booked Johnson when he arrived at the jail at approximately 10:00 a.m. Hillstrom Decl. ¶ 7 (#49). Johnson informed Hillstrom of his condition and requested to wear latex gloves that he had brought with him. *See id.*; Johnson Decl. ¶ 4 (#56). Hillstrom did not permit Johnson to wear the latex gloves or any other gloves. Hillstrom Decl. ¶ 7 (#49); Johnson Decl. ¶ 7 (#56). Hillstrom admits that Johnson could have worn the jail's gloves upon obtaining approval from Moberg. Hillstrom Decl. ¶ 7 (#49). However, Moberg was not at the jail when Johnson was booked, and nobody called her even though she was on-call and regularly received calls about inmates' medical conditions. *See* Engle Decl. Ex. 1, at 24-25, 29, 46, 60, Ex. 2, at 5, 8 (#57). Moberg did not arrive at the jail that day until 3:19 p.m.—at which point Johnson had been held under florescent light for approximately four hours. *See id.* Ex. 2, at 5, 8 (showing Johnson booked at 9:50 a.m. and Moberg on duty at 3:19 p.m.); Johnson Decl. ¶ 4 (#56) (Johnson admitting that he was kept in a room with no lights for the first one to two hours of his sentence).

At some point after Moberg arrived at the jail, Hillstrom contacted her about Johnson. Engle Decl. Ex. 1, at 56-57 (#57). "Within a minute of hearing about him," Moberg determined that Johnson needed to be released early because the jail lacked the medical capacity to care for him. *Id.* Ex. 1, at 64-68. Moberg immediately informed Hillstrom of the recommended release, and less than 30 minutes later, she provided that same recommendation to the other Deputy Defendants. *See id.* Ex. 1, at 72-74 (Moberg testifying that she told all the deputies that were working on February 28, 2014 that Johnson needed to be released); *id.* Ex. 2, at 3-4, 8-9, 12 (Officer Activity Log showing that all of the Deputy Defendants were working on February 28, 2014).

Moberg had the authority to recommend early release of inmates for medical conditions. *Id.* Ex. 1, at 67. When an inmate's charges would not permit early release, she could recommend a transfer to a different facility.[4] Engle Decl. Ex. 1, at 67 (#57). However, Moberg rarely made such recommendations. *Id.* In fact, she recommended early release on only two other occasions during the entire time she worked at the jail. *Id.* Ex. 1, at 68. Incidentally, one of the other occasions was that same day, when Moberg determined that the jail could not care for an inmate who had stage four cancer. *Id.* Ex. 1, at 67, 69-70. The cancer patient inmate was released on February 28, 2014. *Id.* Ex. 1, at 80-81. Although the parties have not provided the exact time that inmate was released, it is reasonable to infer that it was at or before 8:28 p.m., as that was the last release recorded on the jail's Officer Activity Log for the day. *Id.* Ex. 2, at 10. Moberg made the same recommendation for Johnson that she made for the cancer patient inmate. *Id.* Ex.

---

[4] It is reasonable to infer that Johnson's charges permitted early release, as he was eventually released one day early for reasons unrelated to his medical condition. *See id.* Ex. 2, at 16 (#57); Lundy Decl. ¶ 5 (#48).

1, at 81. However, the Deputy Defendants ignored Moberg's recommendation regarding Johnson.

Johnson was not released until 9:10 a.m. the following day, March 1, 2014. *Id.* Ex. 2, at 16. Although Johnson was released one day early, it was on the basis of security and overcrowding concerns—not his medical condition. Lundy Decl. ¶ 5 (#48). Indeed, there is no evidence that any of the deputies took any action to secure Johnson's release pursuant to Moberg's recommendation. *Cf.* Engle Decl. Ex. 2 (#57) (Officer Activity Log). Because Johnson was not released on February 28, 2014 on account of his medical condition but the cancer patient was, it is reasonable to infer that the Deputy Defendants ignored Moberg's recommendation. It is also reasonable to infer that the Deputy Defendants understood the importance of that recommendation because it was given by a medical professional who rarely recommended early release. Thus, there are genuine issues of material fact as to whether the Deputy Defendants acted with deliberate indifference when they ignored Moberg's medical recommendation. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 & n. 6 (9th Cir.1999) ("a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon."); *Cf. Farmer*, 511 U.S. at 844 (holding that prison officials may avoid liability if they respond reasonably to the risk of harm).

Moreover, Johnson testified that every time a deputy walked by his cell or offered him food, he would summon them for help but was ignored. Johnson Decl. ¶ 6 (#56). The Officer Activity Log shows that all of the Deputy Defendants other than Rhode offered Johnson food and walked by his cell to perform visual checks. *See* Engle Decl. Ex. 2, at 5-15 (#57). A reasonable trier of fact could therefore also find that defendants Lundy, Hillstrom, Gutierrez, Brantner, Dye and Watson acted with deliberate indifference by ignoring Johnson's direct

requests for medical help.[5]  *See Jett*, 439 F.3d at 1096 (Deliberate indifference may be established by showing "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." (citation omitted)).

I reject the Deputy Defendants' arguments that the rarity of Johnson's medical condition and their purported attempts to accommodate the condition preclude a finding of deliberate indifference. The rarity of PCT is relevant only to the extent it establishes that the Deputy Defendants did not knowingly disregard a serious risk to Johnson's health. *See Colwell*, 763 F.3d at 1066 (discussing the elements of an Eighth Amendment claim). However, it is undisputed that the Deputy Defendants knew that Johnson's skin could not be exposed to florescent light for medical reasons. *See* Engle Decl. Ex. 1, at 72-74 (#57) (Moberg testifying that she told all the deputies that were working on February 28, 2014 that Johnson needed to be released); *id.* Ex. 2, at 3-4, 8-9, 12 (Officer Activity Log showing that all of the Deputy Defendants were working on February 28, 2014); Johnson Decl. ¶ 4 (#56) (Johnson testifying that he provided his medical records to the jail). Therefore, notwithstanding the purported rarity of PCT, a reasonable trier of fact could find that the Deputy Defendants acted with deliberate indifference.

---

[5] Although there is no evidence that Rhode ignored Johnson's direct requests for help, the evidence that he ignored Moberg's medical recommendation to secure Johnson's release is sufficient to support a finding that he acted with deliberate indifference. *See id.* Ex. 1, at 72, 82. Additionally, Moberg also testified that she told Rhode to allow Johnson to wear gloves while he was in the jail. *See id.* Ex. 1, at 82-83. Three of the other Deputy Defendants testified that inmates are permitted to wear gloves as long as the jail nurse authorizes it. Hillstrom Decl. ¶ 7 (#49); Lundy Decl. ¶ 2 (#48); Dye Decl. ¶ 5 (#50). However, Rhode never provided Johnson with any gloves, and Johnson disputes that he ever refused jail's gloves. Johnson Decl. ¶ 7 (#56) ("No other gloves were offered to me during my stay. I did not refuse any offer of gloves at any time."). That evidence would also permit a reasonable trier of fact to find that Rhode acted with deliberate indifference.

Nor do the Deputy Defendants' purported attempts to accommodate Johnson's PCT preclude a finding of deliberate indifference. In support of their argument to the contrary, Defendants contend that they provided Johnson with a blanket, mattress, and pillow, all of which he could have used to cover his hands. Defendants further contend that Dye provided Johnson with an additional pair of socks on the second day of his sentence so he could cover his hands. Defendants also appear to argue, in passing, that Johnson could have covered his hands with the socks that he wore on his feet for the entirety of his sentence. None of those purported accommodations preclude a finding of deliberate indifference.

A plaintiff "need not prove that he was completely denied medical care" in order to prevail on an Eighth Amendment claim. *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000). Rather, a plaintiff can prevail on an Eighth Amendment claim by showing that the defendants were deliberately indifferent in the manner in which they provided medical care. *Colwell*, 763 F.3d at 1066 (citing *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). In deciding whether jail officials acted with deliberate indifference, the court owes no deference to the officials' judgments regarding the manner of treatment. *Id.* (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.1989)). Johnson testified that the mattress, blanket, and pillow did not sufficiently protect his hands because when he fell asleep, he would inadvertently remove his hands from the limited cover those items provided. Johnson Decl. ¶ 5 (#56). Drawing all reasonable inferences in Johnson's favor, a trier of fact could find that the Deputy Defendants acted with deliberate indifferences by giving Johnson nothing more than standard bedding in response to his PCT.

Nor is summary judgment warranted on the basis of Dye providing Johnson an additional pair of socks on the second day of his sentence. A reasonable trier of fact could find that Dye

gave Johnson the additional pair of socks only after the Deputy Defendants ignored Moberg's medical recommendations and Johnson's requests for help. *See* Engle Decl. Ex.1, at 57, 63-64, 66, 73 (#57) (Moberg testifying that she informed all of the Deputy Defendants on February 28, 2014 that Johnson needed to be released); *id.* Ex. 2, at 12 (showing that Dye provided the additional socks at 6:07 a.m. on March 1, 2014, after the Deputy Defendants had already passed Johnson's cell several time). Because Johnson can establish deliberate indifference by showing that the Deputy Defendants *delayed* his medical treatment or care, the additional pair of socks does not warrant summary judgment. *See Estelle*, 429 U.S. at 104; *Colwell*, 763 F.3d at 1066 (quoting *Hutchinson*, 838 F.2d at 394).

Finally, the parties genuinely dispute whether the Johnson's feet are affected by PCT. Johnson provided the following testimony at his June 4, 2015 deposition:

Q.    Does [the] fluorescent lighting bother you as we're sitting here today?

A.    [Not as] long as I have my hands under the table.

Q.    But you're not covering your face. Do you need to cover your skin around your face?

A.    No.

Q.    Is it just your extremities, your hands and your feet?

A.    Just the tops of my hands.

Q.    Just the hands?

A.    Mm-hm.

Q.    Yes?

A.    Yes.

Q.    But your feet, you don't typically have any problems with your feet and PCT?

A.   No.

Warren Decl. Ex. 1, at 7-8 (#51-1).  Subsequently, Johnson provided affidavit testimony that his

PCT does affect the tops of his feet.  Johnson Decl. ¶ 2 (#56).  Defendants correctly note that

Johnson cannot generate a genuine issue of material fact by contradicting his prior sworn

testimony.  *See Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009) (citing *Kennedy v.*

*Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).  However, Johnson's affidavit testimony

is not contradictory.  Johnson merely testified at deposition that the light in the deposition room

was not bothering his feet and that he *typically* does not experience PCT problems with his feet.

Warren Decl. Ex. 1, at 7-8 (#51-1) (emphasis added).  When read in conjunction with the letter

from Johnson's physician stating that Johnson experiences "very few outbreaks due to his

vigilance at protecting his skin," it is reasonable to interpret Johnson's deposition testimony as

stating that he typically does not have PCT symptoms on his feet because he keeps them

covered.  *See* Johnson Decl. Ex. 1 (#56).

More important, the letter from Johnson's physician also affirmatively states that

Johnson's feet are affected by his PCT.  *See id.*  Johnson's physician executed that letter on

January 14, 2014 (before Johnson began serving his sentence).  *Id.*  Regardless of whether the

statements in the letter were based on the physician's own observations or Johnson's subjective

reporting, they clearly preceded Johnson's June 2015 deposition testimony.  Consequently, even

absent Johnson's affidavit testimony, there is still a genuine issue of material fact as to whether

Johnson's feet are affected by PCT.  A reasonable trier of fact could therefore find that Johnson

was unable to use the socks he wore on his feet to cover his hands during his sentence.

### b.  Defendant Moberg

Conversely, a reasonable trier of fact could not find that Moberg acted with deliberate indifference.  Johnson claims that Moberg violated his Eighth Amendment rights by failing to examine him or provide him with protective covering for his skin.  However, in order to prevail on that claim, Johnson would have to show that Moberg (1) knew that her inaction created a substantial risk of serious harm to Johnson and (2) disregarded that risk.  *See, e.g.*, *Gibson*, 290 F.3d at 1188 (citations omitted).  Johnson has failed to present any evidence to that effect.

To the contrary, Moberg immediately responded to the risk to Johnson's health by instructing Hillstrom to secure his early release.  Engle Decl. Ex. 1, at 64-68, 86 (#57).  Less than 30 minutes later, she relayed that same instruction to all the other deputies on duty.  *Id.* Ex. 1, at 73.  Moberg also separately instructed two of the deputies to give Johnson gloves and "whatever he needs" to cover himself while he was waiting to be released.  *Id.* Ex. 1, at 82-83.  Moberg believed that the best treatment she could give Johnson was recommending his immediate release.  *Id.* Ex. 1, at 66.  Indeed, Moberg's ability to eliminate the risk to Johnson's health was limited by her role in the jail.  She could not actually release inmates early.  *Id.* Ex. 1, at 66-67, 80; Lundy Decl. ¶ 5 (#48).  Nor could she actually provide inmates with gloves.  *See* Engle Decl. Ex. 1, at 82-83 (#57) (Moberg testifying that she could authorize gloves, but the guards had to actually issue them because of contraband concerns).  Rather, she was only able to *recommend* early release and *authorize* the use of gloves.  *Id.* Ex. 1, at 66-67, 80, 82-83.  That is exactly what she did.  Therefore, Moberg reasonably responded to the risk to Johnson's health.  *See Peralta*, 744 F.3d at 1082 ("[E]ven if an official knows of a substantial risk, [she's] not liable 'if [she] responded reasonably.'" (quoting *Farmer*, 511 U.S. at 844)).

The Eighth Amendment did not require Moberg to meet with or physically examine Johnson during his sentence. When Hillstrom initially informed Moberg of Johnson's condition, Moberg was in the middle of caring for the cancer patient inmate, who she felt had more pressing medical needs. Engle Decl. Ex. 1, at 58-59 (#57). At the time, the jail's medical department was short-staffed. *Id.* Ex. 1, at 30. Although the jail typically employed two nurses, Moberg was the only nurse working for the jail at the time of Johnson's sentence. *Id.* Moberg did not have authority to hire a second nurse. *See id.* Ex. 1, at 51-52. She was pregnant and on-call seven days a week. *Id.* Ex. 1, at 29, 46, 70. Moberg was overworked and lacked adequate resources at the jail. *See id.* Ex. 1, at 29, 34, 48-54. In fact, Moberg informed her supervisor that her nursing license could not continue to support the jail unless the medical staffing situation changed. *Id.* Ex. 1, at 53-54. On these facts, a reasonable trier of fact could not find that Moberg disregarded a substantial risk to Johnson's health by failing to visit him during his sentence. *See Peralta*, 744 F.3d at 1082-83 (holding that, in determining whether a prison official's conduct is reasonable, it is appropriate to consider limitations on the official's resources when the official lacks budgeting authority).[6]

Additionally, there is no evidence that Moberg was aware that her inaction posed a risk to Johnson's health after she finished caring for the cancer patient inmate. Based on the information she received from the deputies, Moberg believed that Johnson had everything he needed to be as safe as possible in his cell until he was released. Engle Decl. Ex. 1, at 78-79 (#57). There is nothing to suggest that Moberg knew that the deputies would ignore her instructions to provide Johnson with protective covering and secure his immediate release. *See*

---

[6] The *Peralta* court's holding applies only to § 1983 suits for monetary relief. *See id.* at 1083. Johnson seeks only monetary damages for his Eighth Amendment claim. *See* Am. Compl. ¶¶ 12-14 (#11).

*Gibson*, 290 F.3d at 1188 ("If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." (citing *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir.2001))). Consequently, Moberg is entitled to summary judgment on Johnson's Eighth Amendment claim.

### 3. Qualified Immunity

The Deputy Defendants are not entitled to qualified immunity. Qualified immunity "shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). Resolving the issue of qualified immunity involves a two-step inquiry. *Id.* First, the court must determine whether, taken in the light most favorable to the plaintiff, the facts show the defendants' conduct violated a constitutional right. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the first inquiry is answered in the affirmative, the court "must further inquire 'whether the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citation omitted). "Officials can . . . be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

I have already determined that a reasonable trier of fact could find that the Deputy Defendants violated Johnson's Eighth Amendment rights. Additionally, a reasonable trier of fact could also find that those rights were "clearly established." The Ninth Circuit has held that it is clearly established that a prison official cannot intentionally deny or delay medical care. *See*

*Clement*, 298 F.3d at 906 (citations omitted); *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.

1992) ("[T]he law regarding the medical treatment of prisoners was 'clearly established' [in

1985]." (citing *Estelle*, 429 U.S. at 103)); *see also Albers v. Whitley*, 743 F.2d 1372, 1376 (9th

Cir. 1984) (holding that a finding of deliberate indifference necessarily precludes a finding of

qualified immunity), *rev'd on other grounds*, 475 U.S. 312 (1986).  Consequently, the Deputy

Defendants are not entitled to qualified immunity.

In sum, Moberg is entitled to Summary Judgment on Johnson's First Claim for Relief.

However, the Deputy Defendants are not.  Defendants' argument that the County is entitled to

summary judgment on Johnson's Eighth Amendment claim against it (Johnson's Second Claim

for Relief) is entirely dependent on their argument that the Deputy Defendants are entitled to

summary judgment on Johnson's First Claim for Relief. *See* Defs.' Mot. for Summ. J. 11-12

(#47).  Consequently, the County is not entitled to summary judgment either.

## II.    ADA Claim

Through his Third Claim for Relief, Johnson alleges that the County and the Deputy

Defendants violated Title II of the ADA by refusing to provide him with a darkened room or

access to gloves. *See* Am. Compl. ¶ 23 (#11).  For the reasons provided below, genuine issues of

material fact preclude summary judgment on Johnson's Third Claim for Relief.

### A.  Legal Standard

Title II of the ADA provides: "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  Title II's prohibition against discrimination applies to discriminatory policies

in state and local jails. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998);

*Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001). To prove that a jail policy violates

Title II, a plaintiff must prove that "(1) [he] is a qualified individual with a disability; (2) [he]

was excluded from participation in or otherwise discriminated against with regard to a public

entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason

of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (citing *Weinreich v.*

*Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997)). The regulations

that implement Title II require jails to "make reasonable modifications in policies, practices, or

procedures when the modifications are necessary to avoid discrimination on the basis of

disability, unless the public entity can demonstrate that making the modifications would

fundamentally alter the nature of the service, program, or activity." *See* 28 C.F.R. §

35.130(b)(7). It is the plaintiff's burden to show that modifications offered by the defendants

were not reasonable. *See Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001) (citing

*Memmer v. Marin County Courts*, 169 F.3d 630, 633–34 (9th Cir.1999)).

## B. Analysis

Defendants[7] do not dispute that Johnson was a qualified individual with a disability

during his sentence. Rather, Defendants argue that they are entitled to summary judgment on

Johnson's ADA claim because they made reasonable modifications to avoid discriminating

against him on the basis of his disability.[8] According to Defendants, they complied with the

---

[7] In this section of the Findings and Recommendation, I use the term "Defendants" to refer to
only the County and the Deputy Defendants, as Johnson does not assert his ADA claim against
Moberg.
[8] The parties actually couch their arguments in terms of "reasonable accommodations."
However, the ADA language requiring "reasonable accommodations" appears in Title I and
applies only to employers. The language applicable to public services is found in the regulations
implementing Title II. Those regulations require "reasonable modifications" to public services
and programs that discriminate on the basis of disability unless such modifications would
fundamentally alter the nature of the service or program. *See* 28 C.F.R. § 35.130(b)(7).

ADA, as a matter of law, by housing Johnson in cell 903 and providing him with bedding and an extra pair of socks to cover his hands. Defendants also argue that Johnson's ADA claim fails as a matter of law because he failed to engage in an interactive process to identify reasonable accommodations to his disability. I am unpersuaded.

A reasonable trier of fact could find that housing Johnson in cell 903 was not a reasonable modification of Defendants' policy of housing inmates under florescent lighting. To be reasonable, the modification must give disabled inmates "meaningful access" to the jail. *See Clark v. California*, 739 F. Supp. 2d 1168, 1177 (N.D. Cal. 2010) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). Defendants contend that the lights in cell 903 were dimmed for the entirety of Johnson's sentence. Hillstrom Decl. ¶¶ 8-9 (#49); Lundy Decl. ¶¶ 2, 4 (#48). However, Johnson alleges that he was exposed to "full florescent light" in cell 903. Johnson Decl. ¶ 4 (#56). He further alleges that other cells were reduced to low light, but cell 903 never was. *Id*. Consequently, there are genuine issues of material fact regarding whether housing Johnson in cell 903 constituted a reasonable modification.

A reasonable trier of fact could also find that providing Johnson with bedding and an extra pair of socks was not a reasonable modification. A reasonable modification must effectively accommodate the plaintiff's disability. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015) ("The hallmark of a reasonable accommodation is effectiveness." (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002))). Defendants argue that the bedding was an effective modification because Johnson could have used it to cover his hands. Johnson argues that while he was able to use the bedding to cover his hands most of the time, the bedding was not sufficient to keep his hands covered when he slept. *See* Johnson Decl. ¶ 5 (#56). The disputed effectiveness of the bedding presents

a question of material fact that cannot be resolved at summary judgment. *See Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 844 (9th Cir. 2004) ("[T]he determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry." (internal quotation marks omitted) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir.1996))).

Additionally, as explained above, Johnson was not provided with the additional pair of socks until 6:07 a.m. on March 1, 2014. Engle Decl. Ex. 2, at 13 (#57). At that time, Johnson had already been held under florescent lighting for approximately 19 hours. *See id.* Ex. 2, at 5 (showing Johnson being booked at 9:50 a.m. on February 28, 2014); Johnson Decl. ¶ 4 (#56) (Johnson admitting that he was kept in a room with no lights for the first one to two hours of his sentence). Therefore, even assuming the provision of an additional pair of socks constituted a reasonable modification, it would not relieve Defendants of liability for the 19 hours that preceded the modification.

Finally, I also reject Defendants' argument that they are entitled to summary judgment on Johnson's ADA claim because he did not inform Defendants of his condition before he arrived at the jail. In support of that argument, Defendants cite *Dark v. Curry County* for the proposition that the ADA imposes an obligation on disabled individuals to initiate in an interactive process to identify reasonable accommodations. 451 F.3d 1078 (9th Cir. 2006). Defendants misstate the rule from *Dark*. The *Dark* court held that covered entities—i.e. Tillamook County—have an affirmative obligation to initiate an interactive process. *Id.* at 1088. Defendants attempt to flip *Dark* on its head by arguing that it imposes an affirmative obligation on a disabled plaintiff bringing an ADA claim. Simply put, that reading is unfounded.

In sum, genuine issues of material fact preclude summary judgment on Johnson's Third

Claim for Relief.

**III.    Negligence Claim**

Through his Fourth Claim for Relief, Johnson alleges that the County negligently failed

to ensure his health and safety during his sentence. *See* Am. Compl. ¶¶ 27-31 (#11). The

County argues that it is entitled to summary judgment on Johnson's negligence claim because

that claim is based on the same set of facts as his § 1983 claims. Johnson concedes that he is

attempting to assert a negligence claim on the same set of facts as his § 1983 claims. However,

Johnson contends that because his § 1983 claims are based on deliberate indifference rather than

an *intentional* civil rights violation, he need not allege a separate set of facts to support his

negligence claim. I agree.

The County relies on a line of cases from this court stating that a negligence claim cannot

be based on the same set of facts as a § 1983 claim. The seminal case in that line is *Shilo v. City*

*of Portland*, No. CV 04-130-AS, 2005 WL 3157563 (D. Or. Nov. 22, 2005). There, the court

dismissed the plaintiff's negligence claim because it was based on the same set of facts as her §

1983 claim for use of excessive force. *Id.* at *2. Several other courts from this district have cited

*Shilo* for the proposition that "a state common-law claim of negligence may be maintained

separately from a § 1983 claim only when the negligence claim is based on facts that are

different from the facts on which the § 1983 claims are based." *Whitfield v. Tri–Metropolitan*

*Transp. Dist.*, No. CV 06–1655, 2009 WL 839484 at *11 (D.Or. Mar. 30, 2009); *accord Gregory*

*v. City of Newberg*, No. 3:15-CV-00473-BR, 2015 WL 5577755, at *8 (D. Or. Sept. 21, 2015);

*Woods v. Gutierrez*, No. 3:11-CV-01082-BR, 2012 WL 6203170, at *12-13 (D. Or. Dec. 12,

2012); *Barringer v. Clackamas Cty.*, No. CV 09-068-AC, 2010 WL 5349206, at *9 (D. Or. Nov.

22, 2010), *report and recommendation adopted*, No. CIV. 09-68-AC, 2010 WL 5342965 (D. Or. Dec. 21, 2010); *Hadley v. City of Beaverton*, No. CV-09-022-ST, 2010 WL 1257609, at *14 (D. Or. Feb. 16, 2010), *report and recommendation adopted*, No. CV 09-022-ST, 2010 WL 1257610 (D. Or. Mar. 25, 2010); *Rodriguez v. City of Portland*, No. CIV. 09-850-KI, 2009 WL 3518004, at *2 (D. Or. Oct. 21, 2009); *Saberi v. City of Portland*, No. CV 04-1396-MO, 2006 WL 2707995, at *4 (D. Or. Sept. 18, 2006).

At first glance, the broad language from those cases seems to support the County's argument that Johnson's negligence claim cannot be based on the same set of facts as his § 1983 claims. However, that argument falls apart upon closer examination of *Shilo* and its progeny. Those cases all involved § 1983 claims for use of excessive force.[9] The *Shilo* court relied heavily on an Eleventh Circuit case, which in turn, relied on Florida state-court decision holding that there is no cause of action for "negligent" use of excessive force. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001) (citing *City of Miami v. Sanders*, 672 So.2d 46, 47–48 (Fla. Dist. Ct. App. 1996)), *cited with approval in*, *Shilo*, 2005 WL 3157563, at *2. Three of this court's decisions following *Shilo* similarly relied on Oregon cases holding that an intentional tort cannot form the basis of a negligence action. *See Woods*, 2012 WL 6203170, at *12-13 (citing *Kasnick v. Cooke*, 842 P.2d 440, 441 (Or. App. 1992)); *Barringer*, 2010 WL

---

[9] Although the plaintiff in *Whitfield* alleged that the defendant municipality showed "deliberate indifference" to his constitutional rights, his claims were based on excessive force and other Fourth Amendment violations. *See* Am. Compl. ¶¶ 52-53 (#12), No. CIV 06-1655-HA. Similarly, the *Barringer* court analyzed the plaintiff's excessive force claim under the Eighth Amendment because the force was applied post-conviction. 2010 WL 5349206, at *4. However, the court made clear that the plaintiff would still be required to show that the defendants acted intentionally in order to succeed on her excessive force claim. *Id.* at *5 ("Barringer must show, through evidentiary facts, there is no dispute that Deputy Davis applied force maliciously and sadistically for the very purpose of causing harm." (citation omitted) (internal quotation marks omitted)).

FINDINGS & RECOMMENDATION—PAGE 23

5349206, at *9 (citing *Kasnick*, 842 P.2d at 441); *Saberi*, 2006 WL 2707995, at *4 (citing

*Denton v. Arnstein*, 250 P.2d 407, 415 (Or. 1952)).

Unlike the § 1983 claims at issue in *Shilo* and its progeny, Johnson's § 1983 claim is

based on deliberate indifference to medical needs, which requires a showing of only subjective

recklessness—not intent. *See Farmer*, 511 U.S. at 835-36 (contrasting deliberate indifference

with the heightened mental state that a plaintiff must prove to succeed on an excessive force

claim. (citations omitted)); *Johnson*, 2015 WL 1549257, at *15 (citing *Snow*, 681 F.3d at 985–

86). *Shilo* and its progeny are therefore inapposite.

Indeed, Oregon law permits a plaintiff to proceed on alternative theories of negligence

and recklessness. For example, Oregon Revised Statutes section 31.730(1) prohibits recovery of

punitive damages unless the plaintiff can prove, *inter alia*, that the defendant was reckless.[10]

Where there are genuine issues of material fact regarding the defendant's recklessness, the

plaintiff can proceed to trial on both theories. *See Schoenborn v. Stryker Corp.*, 801 F. Supp. 2d

1098, 1103 (D. Or. 2011). Similarly, Oregon Revised Statutes section 31.715(1), (5)(c) prohibits

uninsured and intoxicated drivers from recovering noneconomic damages in a suit based on a

motor vehicle accident unless the driver can prove, *inter alia*, that the defendant was engaged in

reckless driving at the time of the accident. Where there are genuine issues of material fact

regarding the defendant's recklessness and the plaintiff seeks both economic and noneconomic

damages, the plaintiff can proceed to trial on both theories. *See Morehouse v. Haynes*, 253 P.3d

---

[10] The statute provides in pertinent part:
> Punitive damages are not recoverable in a civil action unless it is proven by clear
> and convincing evidence that the party against whom punitive damages are sought
> has acted with malice or has shown a reckless and outrageous indifference to a
> highly unreasonable risk of harm and has acted with a conscious indifference to
> the health, safety and welfare of others.

Or. Rev. Stat. § 31.730(1).

FINDINGS & RECOMMENDATION—PAGE 24

1068, 1074-76 (Or. 2011).[11] Because the *Shilo* line of cases is inapposite and Oregon law permits a plaintiff to proceed on alternative theories of negligence and recklessness, the County is not entitled to summary judgment on Johnson's Fourth Claim for Relief.

## IV.    Damages

Defendants move for partial summary judgment on Johnson's damages prayer to the extent it seeks damages for "lost wages." *See* Am. Compl. ¶¶ 12, 18, 24, 29 (#11). It is undisputed that Johnson was not employed at the time he was incarcerated or at any time since his release. Johnson now concedes that Defendants are entitled to partial summary judgment on his prayer for damages for lost wages. *See* Plf.'s Resp. 27 (#55). Consequently, Defendants should be granted summary judgment on that part of Johnson's damages prayer.

## CONCLUSION

For the reasons provided above, Defendants' Motion for Summary Judgment (#47) should be granted in part and denied in part. Moberg should be granted summary judgment on Johnson's First Claim for Relief. Additionally, Defendants should be granted partial summary judgment on Johnson's prayer for damages for lost wages. Defendants' Motion for Summary Judgment should be denied in all other respects.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a

---

[11] The parties in *Morehouse* settled the plaintiff's claim for economic damages prior to the Supreme Court of Oregon's ruling that he could proceed on his claim for noneconomic damages on a reckless driving theory. *Id.* at 1069.

FINDINGS & RECOMMENDATION—PAGE 25

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 18th day of April, 2016.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge